**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re SUBPOENA to LIGHTSPEED VENTURE PARTNERS | Case No. 1:26-MC-91532<br><br>(Underlying Case Pending: *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611-FDS) |
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>Defendants. | |

# PLAINTIFFS' OPPOSITION TO NON-PARTY LIGHTSPEED MANAGEMENT COMPANY, LLC'S MOTION TO QUASH PLAINTIFFS' SUBPOENA

# TABLE OF CONTENTS

**Pages(s)**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 8

A. The Subpoena Is Timely ........ 8

B. The Subpona Seeks Relevant, Non-Cumulative Materials ........ 9

1. Investor Materials Are Relevant ........ 9

2. The Documents Sought Are Not Cumulative or Overbroad ........ 12

3. Lightspeed's Authorities Do Not Support Quashing ........ 15

C. Lightspeed Has Not Shown Undue Burden ........ 16

D. The Deposition Subpoena Is Reasonably Particular ........ 17

E. The Subpoena Is Proportional to the Needs of the Case ........ 19

F. At Minimum, the Court Should Modify Rather Than Quash the Subpoena ........ 17

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) .......... 10

*Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*,
319 F.R.D. 422 (D.P.R. 2016) .......... 18, 19

*Behrend v. Comcast Corp.*,
248 F.R.D. 84 (D. Mass. 2008) .......... 7, 20

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......... 9

*Cont'l Datalabel, Inc. v. Avery Dennison Corp.*,
2010 WL 2473154 (D. Mass. June 15, 2010) .......... 7

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
89 F. Supp. 3d 211 (D. Mass. 2015) .......... 17

*Green v. Cosby*,
152 F. Supp. 3d 31 (D. Mass. 2015) .......... Passim

*Hawkins v. Medapproach Holdings, Inc.*,
2014 WL 11350177 (S.D.N.Y. June 27, 2014) .......... 14

*Horizons Titanium Corp. v. Norton Co.*,
290 F.2d 421 (1st Cir. 1961) .......... 7, 20

*In re Application of Republic of Ecuador v. Douglas*,
153 F. Supp. 3d 484 (D. Mass. 2015) .......... 8, 13

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
2013 WL 6058483 (D. Mass. Nov. 13, 2013) .......... 7, 8

*Katz v. Shell Energy N. Am. (US), LP*,
566 F. Supp. 3d 104 (D. Mass 2021) .......... 14, 15, 16, 17

*Mango v. BuzzFeed, Inc.*,
316 F. Supp. 3d 811 (S.D.N.Y. 2018) .......... 12

*Mattel, Inc. v. Walking Mountain,*
*Prods.*, 353 F.3d 792 (9th Cir. 2003) .......... 12

*Nova Biomedical Corp. v. i-STAT Corp.*,
182 F.R.D. 419 (S.D.N.Y. 1998) ........ 16

*Pearson v. Univ. of Chicago*,
2021 WL 194725 (D. Conn. Jan. 20, 2021) ........ 15

*Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*,
2024 WL 3925704 (N.D. Cal. Aug. 23, 2024) ........ 15

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
689 F.3d 29 (1st Cir. 2012) ........ 2

*Solamere Cap. v. DiManno*,
621 F. Supp. 3d 152 (D. Mass. 2022) ........ 16

*Sony BMG Music Ent. v. Tenenbaum*,
660 F.3d 487 (1st Cir. 2011) ........ 1, 11

*Thomas & Betts Corp. v. New Albertson's, Inc.*,
2013 WL 11331377 (D. Mass. July 11, 2013) ........ 18

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014) ........ 14, 16

*Trump v. Vance*,
480 F. Supp. 3d 460 (S.D.N.Y. 2020) ........ 3

*U.S. Seal Int'l, Inc. v. Black Dawg Franchise Grp., LLC*,
2014 WL 12927224 (D.N.H. Feb. 26, 2014) ........ 8

*United States v. HVI Cat Canyon, Inc.*,
2016 WL 11683593 (C.D. Cal. Oct. 26, 2016) ........ 18

*Viacom Int'l, Inc. v. YouTube, Inc.*,
2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ........ 13

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
2007 WL 218771 (N.D. Cal. Jan. 29, 2007) ........ 15

**Statutes**

17 U.S.C. § 107(4) ........ 9

17 U.S.C. § 504(c)(2) ........ 11

**Rules**

Fed. R. Civ. P. 26(b)(1) .......... 7, 13

Fed. R. Civ. P. 45(d)(3)(A)(i) .......... 8

Fed. R. Civ. P. 45(d)(3)(A)(iv) .......... 7

Fed. R. Civ. P. 26(b)(2)(C)(ii) .......... 8

# I. INTRODUCTION

Non-party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners ("Lightspeed")[1] is not a distant bystander to this case. It led Defendant Suno, Inc.'s ("Suno") $125 million Series B financing in May 2024 and holds a seat on Suno's Board of Directors.[2] Mot. at 8, 11. After Plaintiffs sued Suno for copyright infringement on a massive scale, Lightspeed doubled and tripled down, investing again in Suno's Series C (November 2025) and Series D (June 2026) rounds. Motion ("Mot.") at 1–2.[3] While Plaintiffs subpoenaed Lightspeed at the beginning of fact discovery seeking documents related to Suno and its Series B investment, Lightspeed's collection and production of documents preceded the additional two funding rounds in which it participated. Plaintiffs thus served a second subpoena requesting documents from this missing time period, as well as a deposition of a corporate designee.

Lightspeed's first production of documents shows why its files matter to two highly relevant issues in this case: its own analyses concede the "[redacted]" and the risk of "[redacted]." Rivera Decl. Ex. 3 at LSVP_00000068 and Ex. 4 at LSVP_00000153.[4] This information is directly probative of Suno's willfulness. *Sony*

---

[1] Lightspeed's claim that Lightspeed Venture Partners "has no documents in its possession, custody, or control" (Mot. at n.1) is contradicted by its own conduct. Lightspeed Venture Partners has already produced documents in this matter, as the October 31, 2025 cover letter accompanying that production shows.

[2] *See* Suno's May 21, 2024 fundraising announcement titled "Suno has raised $125 million," available at https://suno.com/blog/fundraising-announcement-may-2024; *see also* Lightspeed's May 20, 2024 announcement titled "Suno's Hit Factory," available at https://lsvp.com/stories/sunos-hit-factory/.

[3] *See also* Suno's November 19, 2025 fundraising announcement titled "The Future of Music is Already Here," available at https://suno.com/blog/series-c-announcement, and Suno's June 3, 2026 fundraising announcement titled "The Next Chapter for Suno," available at https://suno.com/blog/series-d-announcement.

[4] Citations to "Rivera Decl." are to the Declaration of Mariah Rivera filed herewith. Citations to "Mot." are to Lightspeed's memorandum (Dkt. 1), and to "Mot. Ex." are to the exhibits to the Lovejoy Declaration (Dkt. 1-1).

*BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) (infringement is willful where the defendant "had knowledge that [its] actions constituted copyright infringement or acted with reckless disregard for the copyright holder's rights"). And Lightspeed's investment thesis discusses Suno's plan to become a "[redacted]" that can "[redacted]" Rivera Decl. Ex. 3 at LSVP_00000066. That is evidence, from one of Suno's principal investors, of the market harm that contradicts Suno's fair use defense. *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 64 (1st Cir. 2012) (The fourth factor "requires us to consider both (1) the degree of market harm caused by the alleged infringer's actions, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original.") (internal quotation marks omitted).

Lightspeed's three objections to Plaintiffs' second subpoena—untimeliness, cumulativeness, and burden—fail. *First*, the Subpoena is timely. It was served August 24, 2026, within the timeline set by this Court, with a compliance date well in advance of the September 30, 2026 prior end of fact discovery. ECF No. 252. Lightspeed does not dispute this. Instead, Lightspeed seems to be requesting that the Court quash the subpoena because it was served six weeks before the then-deadline for the close of fact discovery, which has since been extended by almost two months. ECF No. 283. Lightspeed cites no precedent for this extraordinary request. *Second*, the Subpoena is not cumulative of Plaintiffs' initial subpoena because it seeks documents that did not exist when Lightspeed made its first production. Lightspeed's first production cut off on June 6, 2025. But Lightspeed's efforts with Suno continued beyond that date, with two additional investments which involved the creation and sharing of new documents and information. The at-issue subpoena thus seeks documents from June 7, 2025 to present day.

Documents from a new time period are, by definition, not duplicative of documents from an earlier one. *Trump v. Vance*, 480 F. Supp. 3d 460, 493 (S.D.N.Y. 2020) ("the fact that the petitioner was served with one subpoena does not give it immunity from complying with the reasonable demands of a subsequent subpoena"). *Third*, Lightspeed offers nothing to substantiate its burden claim, as it says nothing about custodians, volume, hours, or cost. *See Green v. Cosby*, 152 F. Supp. 3d 31, 35 (D. Mass. 2015) ("The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden."). Indeed, the small size of Lightspeed's initial production—152 documents—suggests that complying with the subpoena would not be overly burdensome, particularly given the limited additional timeframe now at issue. And the Parties' existing agreement that Lightspeed need not reproduce anything Suno has produced also eliminates any overlap with party discovery and further reduces any burden on Lightspeed. *Lastly*, while Plaintiffs believe the topics provided for the deposition are reasonably particular, as discussed with Lightspeed prior to the filing of the Motion, Plaintiffs are now seeking a narrowed set. Plaintiffs have provided a narrowed compromise subpoena filed herewith with each topic either tied to specific documents produced in discovery, one of the six agreed upon categories of document requests, or Lightspeed's role on Suno's board.

Most significantly, *each of these arguments was already considered and rejected by Judge Levenson*. Suno, on behalf of four of its investors, requested that Judge Levenson enter a protective order preventing Plaintiffs from obtaining discovery through its subpoenas, including the second subpoena served on Lightspeed that it is currently attempting to quash. Rivera Decl. Ex. 1. Judge Levenson rejected this request, finding the requested discovery to be directly relevant to the underlying action, and instructing the parties to "work as best they can to minimize burden on third

parties and to get this sorted out in time." Rivera Decl. Ex. 1 at 31:24–32:1. Instead, Lightspeed—which is represented by the same law firm as Suno—filed the instant Motion, even after Plaintiffs expressed a willingness to provide a narrowed set of deposition topics. The Court should recognize this Motion for what it is: an attempt to relitigate issues that Judge Levenson has already considered. In line with Judge Levenson's prior guidance, this Motion should be denied.

## II. BACKGROUND

Suno provides a generative AI product that was trained on millions of copyrighted sound recordings, including Plaintiffs' sound recordings. Plaintiffs filed suit against Suno in June of 2024, asserting claims for copyright infringement. ECF No. 1. Lightspeed is one of Suno's most significant investors. Shortly before the underlying action was filed, Lightspeed led Suno's $125 million Series B funding round that closed in May 2024.[5] It also participated in the Series C round that closed in November 2025 and the Series D round that closed in June 2026, and it currently holds a seat on Suno's Board of Directors. Mot. at 1–2.[6] On June 3, 2026, Suno announced that the Series D round had raised $400 million at a $5.4 billion valuation.[7]

Plaintiffs served Lightspeed with a document subpoena on May 15, 2025. Mot. Ex. F. Lightspeed served objections on June 6, 2025. Lovejoy Decl. ¶¶ 10–11. After conferral, Plaintiffs agreed to narrow the subpoena to the six categories: documents concerning (1) Plaintiffs' sound recordings; (2) Suno's training data, including Suno's efforts or failure to license it; (3) copyright law in relation to Suno; (4) business risks associated with Suno's training data, its relationship to the music industry, negative publicity, and its ability to raise capital; (5) the market for Suno's

---

[5] *See supra* n.2.

[6] *See supra* n.3.

[7] *Id.*

service and outputs; and (6) Suno's actual or potential impact on the music industry. *Id.* ¶¶ 12, 14. Plaintiffs also agreed that Lightspeed need not reproduce documents Suno had already produced in party discovery. Lovejoy Decl. ¶ 13. Lightspeed produced 152 documents in October 2025. Lovejoy Decl. ¶ 15. Lightspeed's collection extended only through June 6, 2025, the date of its objections, and therefore captured no materials from the Series C or D rounds. *Id.* ¶ 16.

On August 20, 2026, Plaintiffs issued a second subpoena to Lightspeed (the "Subpoena"). Mot. Ex. G. The Subpoena contains six document requests, each directed to one of the six categories Lightspeed agreed to in response to the first subpoena. *Id.* The purpose was to obtain relevant documents dated after June 2025, including documents concerning the Series C and D funding rounds. The Subpoena also contains twenty deposition topics for a Rule 30(b)(6) deposition. The Subpoena was served on August 24, 2026, with documents due September 17, 2026. Mot. Ex. G; Lovejoy Decl. ¶ 9. The deposition was noticed for September 24, 2026. *Id.* These response dates were before the then-scheduled September 30 close of fact discovery.

On August 21, 2026, Suno provided a position statement requesting that Judge Levenson enter a protective order preventing Plaintiffs from obtaining discovery through four subpoenas served on Suno investors, including Lightspeed. Rivera Decl. Ex. 1 at 20:7-8. Suno raised the same objections that Lightspeed now raises related to untimeliness, cumulativeness, and burden. Judge Levenson heard the dispute on August 26, 2026. *Id.* at 3:2–14. When Suno's counsel argued that investor discovery had no bearing on the fourth fair use factor, the Court responded: "I don't get why investors in Suno would be irrelevant to a consideration of what is Suno's anticipated or ongoing behavior in the marketplace." *Id.* at 25:12–15. The Court observed that what Plaintiffs were interested in was not copies of Suno's standardized deck, but whether investors "take any notes, capture information that may have been provided in connection with the deck," *id.* at 22:21–

24, and, recalling that an early investor had documented Suno's representations about whether its data would be "mined or farmed from YouTube," stated that this "strikes me as the kind of thing that is more likely found when you ask people what did they say when they showed you the pitch deck," which is "the kind of thing that I do think plaintiffs are entitled to explore," *id.* at 30:16–31:11. On burden and timing, the Court explained that "the question of burden is almost always one that parties can, if they operate in good faith, sort out," and that "a degree of intrusion is inherent [in] the right to secure any person's testimony." *Id.* at 28:15–29:10. The Court ultimately did not grant a protective order, noting that it "expect[ed] the parties to work as best they can to minimize burden on third parties and to get this sorted out in time," *id.* at 31:24–32:1, and closed by encouraging Suno, "to the extent that Suno's in a position to see this done quickly and easily and to minimize the amount of friction in getting this done, … to do so," *id.* at 32:24–33:4.

After the hearing, on September 8, 2026, Lightspeed served its responses and objections to the Subpoena, refusing to provide any documents or testimony. Rivera Decl. ¶ 4. The parties met and conferred on September 11, 2026. Rivera Decl. ¶ 5. While Plaintiffs expressed a willingness to negotiate a narrowed set of deposition topics, Lightspeed confirmed that it was unwilling to produce documents or a corporate designee, and informed Plaintiffs that it would be moving to quash the subpoena. *Id.* On September 16, 2026, Lightspeed filed the instant Motion in the Northern District of California, seeking to quash the Subpoena on the same basis that this Court rejected in connection with Suno's request for a protective order. On October 2, 2026, the Northern District of California transferred the Motion to this Court under Rule 45(f). *See* Order, *In re Subpoena to Lightspeed Venture Partners*, 3:26-mc-80289-TSH (N.D. Cal.), ECF No. 15.

## III. LEGAL STANDARD

Rule 45 permits a party to obtain documents and testimony from a non-party within the scope of discovery available under Rule 26(b). *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig*., 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013). Rule 26(b)(1) in turn permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In evaluating a motion to quash, the court "weigh[s] the need of the party seeking discovery against any undue hardships created by permitting it[,]" considering "relevance, the requesting party's need, the breadth of the request, and the burden imposed[.]" *See Green*, 152 F. Supp. 3d at 36 (internal quotations and citation omitted); *see also Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008) (undue burden turns on "the relevance" and "necessity of the documents sought, the breadth of the request . . . [and] expense and inconvenience" (internal quotations and citation omitted)). "Non-parties are not immune from discovery[.]" *Cont'l Datalabel, Inc. v. Avery Dennison Corp.*, 2010 WL 2473154, at *1 (D. Mass. June 15, 2010). A movant that asks the Court to quash, rather than limit, a subpoena bears "a particularly heavy burden" to "make a substantial showing in support of a motion to quash[.]" *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961).

A court must quash or modify a subpoena that "subjects a person to undue burden[,]" Fed. R. Civ. P. 45(d)(3)(A)(iv), but "[t]he party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden[.]" *Green*, 152 F. Supp. 3d at 36-37 (citation omitted) (cleaned up). That burden is not carried by generalities. A party "'cannot rely on a mere assertion that compliance would be burdensome and

onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *New England Compounding Pharmacy*, 2013 WL 6058483, at *6.

## IV. ARGUMENT

### A. The Subpoena Is Timely

Lightspeed's argument that the Subpoena is "untimely" because it was served "six weeks before the close of fact discovery" and "ten months" after Lightspeed's 2025 production is meritless. Mot. at 5–6. The Subpoena was served on August 24, 2026, with a production date of September 17 and a deposition date of September 24, all within the fact discovery period. Mot. Ex. G. A subpoena served within the fact discovery period, with a reasonable compliance date that also falls within that period, is timely. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (court must quash only a subpoena that "fails to allow a reasonable time to comply"); *U.S. Seal Int'l, Inc. v. Black Dawg Franchise Grp., LLC*, 2014 WL 12927224, at *2 (D.N.H. Feb. 26, 2014) ("[T]here is simply nothing in the Federal Rules of Civil Procedure that prohibits a party from seeking discovery at the proverbial 'last minute'" so long as the recipient "can respond before the deadline lapses"). Lightspeed cites no authority for the proposition that a subpoena served and returnable within the discovery period is untimely because it could have been served sooner. Mot. at 5–6. Nor does Lightspeed suggest that the twenty-four days it was given to produce documents, or the thirty-one days before the noticed deposition, was an unreasonable time to comply.

Lightspeed's invocation of Rule 26(b)(2)(C)(ii), *see* Mot. at 6, also fails because it assumes that the information Plaintiffs now seek was available to be obtained earlier. Rule 26(b)(2)(C)(ii) applies where the requesting party "has had ample opportunity to obtain the information by discovery in the action." *See In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 492 (D. Mass. 2015) (limitation "does not bar" discovery where delay was not the

requesting party's fault). Suno's Series C and Series D rounds closed in November 2025 and June 2026 respectively,[8] both *after* the June 2025 production cut-off that Lightspeed applied to its first production. Plaintiffs could not have compelled the production of materials that did not yet exist.

Finally, that Plaintiffs "never raised any deficiency" with Lightspeed's 2025 production, *see* Mot. at 1, is irrelevant. Plaintiffs do not contend that the 2025 production was deficient for the period that it covered. Rather, they seek new documents for a time period that it did not cover and that had not yet occurred. The new Subpoena is therefore timely.

## B. The Subpoena Seeks Relevant, Non-Cumulative Materials

### 1. Investor Materials Are Relevant

As discussed above, Plaintiffs are seeking documents concerning six narrow categories: (1) Plaintiffs' sound recordings; (2) Suno's training data, including Suno's efforts or failure to license it; (3) copyright law in relation to Suno; (4) business risks associated with Suno's training data, its relationship to the music industry, negative publicity, and its ability to raise capital; (5) the market for Suno's service and outputs; and (6) Suno's actual or potential impact on the music industry. *See supra* at 5. Each is squarely relevant to Suno's fair use defense and willfulness.

As Lightspeed acknowledges, one of the "central issues in this case" is "whether Suno's use of copyrighted recordings to train its AI service constitutes infringement or fair use." Mot. at 7–8. The fourth fair use factor evaluates "the effect of the use upon the potential market for or value of the copyrighted work[,]" 17 U.S.C. § 107(4), and asks the court to consider "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market' for the original," *Campbell v. Acuff-Rose*

**8** *See supra* n. 3.

*Music, Inc.*, 510 U.S. 569, 590 (1994) (citation omitted). The first factor "relates to the problem of substitution[,]" and asks whether the use is "likely to provide the public with a substantial substitute for matter protected by the copyright owner's interests in the original work or derivatives of it[.]" *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528, 531–33 (2023) (cleaned up). Those inquiries will focus on Suno's actual and projected effect on the market for sound recordings. Suno's communications with investors regarding the market for its service and its potential impact, as well as investors' analyses of the same, are among the best evidence for the market harm analysis. A company raising capital tells its investors, candidly and in detail, what market it is targeting, whose share it intends to take, how fast it is growing, and what risks, including legal risks, it faces. Lightspeed's prior production proves the point: it includes Suno's presentation of itself as a "[redacted]" positioned to "[redacted]," as well as Lightspeed's internal identification of the "[redacted]" and "[redacted]" as investment risks. Rivera Decl. Ex. 3 at LSVP_00000066, -068; *id.* Ex. 4 at LSVP_00000153 . Those materials go directly to substitution and market harm under the first and fourth fair use factors.

The importance of this discovery is amplified by how rapidly Suno has grown since this litigation began and since Lightspeed's initial production. When Plaintiffs filed the underlying action, Suno had only just closed its $125 million Series B funding round. Since then, the company's valuation has soared to $5.4 billion, a dramatic increase in a short span of time.[9] In the past few months alone, Suno has taken steps to infiltrate additional markets and extend its reach well beyond where it operated when this case was filed.[10] Suno's business, its models, and the

---

[9] *See supra* at 1 n.3.

[10] *See, e.g.*, Suno's announcement dated October 1, 2026, with the title "Introducing Speech (Continued...)

scope of its conduct are therefore moving targets. The longer this case goes on, the more Suno's footprint expands, and the more Plaintiffs' harm grows with it. A record frozen at the time of Lightspeed's prior production cannot capture the full nature and extent of the conduct at issue. Plaintiffs thus require relevant documents that cover this additional time period.

A magistrate judge in the Northern District of California reached the same conclusion on materially identical facts in Plaintiffs' case against Udio, another generative AI company, for the same conduct. In that case, Plaintiffs moved to compel the lead investor in Udio to produce the same categories of documents at issue here. *See* Rivera Decl., Ex. 2 (the "*a16z* Order"). The magistrate judge granted the motion, holding that "information about the market for Udio's services and its actual or potential impact on the music industry go to fair use." *Id.* at 6. On the fourth factor specifically, the *a16z* court held that "[i]nformation about Udio's market and its actual or potential impact on the music industry goes to its dilutive effect on the market and is thus relevant." *Id.* at 5. And on the first factor, the court credited Plaintiffs' showing that the discovery "goes to understanding how Udio's business plan is premised on exploiting Plaintiffs' copyrighted works to create an AI product that produces audio files which will compete with the works on which it was trained." *Id.* Although the *a16z* Order is not binding here, its reasoning is consistent with the tentative view Judge Levenson expressed when confronted with the instant dispute.

Documents concerning Suno's training data and/or copyright and business risks associated with investing in Suno also bear directly on Suno's knowledge of the infringement risk it was running. This, in turn, speaks to the willfulness of Suno's infringement and is relevant to damages. *See* 17 U.S.C. § 504(c)(2); *see also Sony BMG Music Ent.*, 660 F.3d at 507 (infringement is willful

---

(beta)," available at https://suno.com/blog/introducing-speech-beta; Suno's announcement dated September 8, 2026, with the title "A New Partnership with Believe and TuneCore," available at https://suno.com/blog/believe-partnership.

where the defendant "had knowledge that [its] actions constituted copyright infringement or acted with reckless disregard for the copyright holder's rights[]"); *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 815 (S.D.N.Y. 2018) (evidence of infringer's conduct "both before and after" the infringement "is relevant to the 'infringer's state of mind'" and to the statutory-damages multiplier). The *a16z* Order considered this argument as well and reached the same conclusion, holding that "information about Plaintiffs' sound recordings, Udio's training data, copyright liability, business risks, and efforts to license training data all go to willfulness," and that the requested discovery was therefore relevant. *a16z* Order at 6.

Lightspeed's reliance on *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), Mot. at 9, is misplaced. In *Mattel*, the plaintiff served a sweeping Rule 30(b)(6) subpoena on a museum whose only connection to the case was that it employed the defendant's expert witness, demanding among other things the museum's own licensing practices, royalty rates, sales channels, and litigation history. 353 F.3d at 813–14. The district court found the subpoena "'abusively drawn'" and "'served for the purpose of annoying and harassment and not really for the purpose of getting information.'" *Id.* Nothing about that decision suggests that the discovery sought here is irrelevant, and evidence regarding Suno's contemporaneous statements to a lead investor about its market, growth, competition, and legal exposure, as well as Lightspeed's contemporaneous understanding of those matters, speak directly to fair use and damages.

### 2. The Documents Sought Are Not Cumulative or Overbroad

Lightspeed argues that the Subpoena's document requests are "cumulative and duplicative" because they are "identical" to the six categories it addressed in 2025. Mot. at 7. But the requests are identical precisely because Lightspeed agreed to produce documents responsive to those topics in 2025, demonstrating that they are relevant and proportional. The only change is the time period,

and a new time period means new documents. Everything Plaintiffs now seek post-dates the June 6, 2025 cutoff of the prior production: Lightspeed's participation in the Series C round (November 2025) and the Series D round (June 2026); any diligence, data-room materials, financial models, projections, and investor updates Suno provided in connection with those rounds; Lightspeed's internal evaluation of the company; board-level materials; and any communications concerning Suno's licensing of training data or its expansion into new products. None of that material was "collected, reviewed, and produced" in 2025. Mot. at 8. None of it even existed when Lightspeed made its first production. It therefore is not cumulative of prior discovery, much less unreasonably so, as Rule 26(b)(2)(C)(i) requires. *Republic of Ecuador*, 153 F. Supp. 3d at 492 ("independent and distinct" material from previous production is "not unreasonably cumulative").

Lightspeed's assertion that Plaintiffs have "not identified any specific document … missing from Lightspeed's prior production that they expect to find within the expanded period," Mot. at 8, misses the point. A requesting party need only show that the requests are reasonably calculated to reach relevant material. *See* Fed. R. Civ. P. 26(b)(1); *Green*, 152 F. Supp. 3d at 34–35 (scope of Rule 45 discovery is "decidedly broad"). Here, Plaintiffs know what the additional discovery sought likely contains because Lightspeed's own earlier documents show what it generates in the ordinary course when it evaluates Suno in connection with a fundraising round: risk analyses, market assessments, and records of Suno's representations. Lightspeed does not deny that responsive documents exist, and Plaintiffs are entitled to discovery of these relevant materials.

Lightspeed's argument that the same information is available from Suno fails for the reasons the *a16z* court gave. That court recognized that "[i]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the

third party may contain different versions of documents, additional material, or perhaps, significant omissions." *a16z* Order at 3. Following *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3-4 (N.D. Cal. Aug. 18, 2008), which compelled production from venture capital firms with "close relationships" to the defendants because they "may have obtained information regarding defendants' intent and knowledge through oral communications," the *a16z* court held that a lead investor with a board seat and advisory role "will have documents that are not in Udio's possession, but that nevertheless reflect Udio's knowledge, state of mind, and intent." *a16z* Order at 3–4; *see also Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *4 (D. Mass. Sept. 8, 2014) ("there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party"); *Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 106 (D. Mass 2021) (requesting party may obtain documents from a non-party "to determine whether [the party's] production is complete[]"); *Hawkins v. Medapproach Holdings, Inc.*, 2014 WL 11350177, at *4 (S.D.N.Y. June 27, 2014) (rejecting duplicativeness objection to subpoenas to a party's affiliates because the party "and the various non-parties may have different subsets of documents within their possession, custody, and control[]"). Lightspeed stands in exactly that same position: Lightspeed's files show what Suno said to them, what a sophisticated investor asked, and what that investor concluded, *i.e.*, the "other side of the conversation." Rivera Decl. Ex. 1 at 19:4-8; *see also id.* 22:21-24 (noting that Plaintiffs are "not looking for their copies of a standardized deck," but for whether anyone "take[s] any notes, capture[s] information that may have been provided in connection with the deck.").

Finally, the parties' existing agreement that Lightspeed need not reproduce documents Suno has already produced, Lovejoy Decl. ¶ 13, means that the Subpoena is narrowly targeted to reach only material that Plaintiffs have not already received from Suno. Even apart from that

agreement, though, a requesting party has the right to test the veracity and completeness of the opposing party's production through third-party discovery. *Trustees of Boston University*, 2014 WL 12792496, at *4; *Katz*, 566 F. Supp. 3d at 106; *Pearson v. Univ. of Chicago*, 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021) ("Using discovery from a non-party to vet the fulsomeness of a party's discovery is permissible under the Federal Rules."). At bottom, Plaintiffs' requests are narrowly tailored to seek relevant materials it is not able to obtain from party discovery and well within the bounds of what it is entitled to seek from a third-party.

### 3. **Lightspeed's Authorities Do Not Support Quashing**

The cases in the context of venture-capital investors on which Lightspeed relies—*Visto Corp. v. Smartner Info. Sys., Ltd.,* 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007) and *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 3925704, at *3-5 (N.D. Cal. Aug. 23, 2024), *see* Mot. at 10—are the very decisions the *a16z* Order distinguished. *a16z* Order at 3-4. As the *a16z* court explained, those cases declined to compel investors' internal analyses where "there is nothing in the record to suggest that [the venture capital firm] had data or documents not available from [the company] or from public sources[.]" *Id.* at 3. *Visto* involved a patent infringer's subpoena to two funds that participated in a single financing round of the patentee where there was "no reason to believe" the funds had anything the patentee and public sources did not. *Visto,* 2007 WL 218771, at *4. *SARA* involved investors that had *already produced* their investment-decision memoranda; the court declined to order the additional valuation data underlying them. 2024 WL 3925704, at *4. In contrast, here, as in *a16z*, "there is reason to believe that [the investor] will have documents that are not in [defendant's] possession, but that nevertheless reflect [defendant's] knowledge, state of mind, and intent as is relevant to the copyright infringement claims of this case." *Id.* at 4. The record affirmatively shows that

Lightspeed generates its own analyses of Suno's legal and market risks, Rivera Decl. Exs. 3-4, and that Suno makes representations to Lightspeed that appear nowhere in Suno's production, *id*.

*Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419 (S.D.N.Y. 1998), and *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152 (D. Mass. 2022), Mot. at 8, fare no better. Both courts found the requests untethered to the claims and fully duplicative of what had already been produced. *See Nova*, 182 F.R.D. at 421–23 (accused infringer served a second round of subpoenas on a witness who had already produced documents and been deposed, seeking duplicative information and discovery from years before infringing product was on the market); *Solamere*, 621 F. Supp. 3d at 154 (finding the discovery at best "tangentially relevant" to third-party claims and that the requesting parties had "ample opportunity to obtain the discovery" from the defendant and a third party more directly involved). Here, by contrast, the categories are ones Lightspeed itself agreed are relevant, the time period is one for which nothing has been produced, and Lightspeed—far from a stranger to the dispute—is a lead investor in and board member of the defendant that made two further investments in it during the very period at issue.

### C. Lightspeed Has Not Shown Undue Burden

The party seeking to quash a subpoena as unduly burdensome bears the burden of substantiating that claim. *Green*, 152 F. Supp. 3d at 35; *Katz*, 566 F. Supp. 3d at 107; *Trustees of Boston University*, 2014 WL 12792496, at *4 (non-party "has not made a showing as to the nature and extent of the actual burden it would face in responding to the subpoena[]"). Lightspeed has made no such showing. In fact, it has not offered *any* evidence to support its claim that the requested discovery is burdensome: not the number of custodians required, the volume of potentially responsive materials from the relevant period, the search methodology, or any quantification of the number of hours or cost that complying with the Subpoena will require. The

Motion's bare assertion that compliance would "impose substantial costs," Mot. at 10-11, falls far short of this standard. *See a16z* Order at 6 (finding that even the investor's estimate that a search would "be in excess of 100 hours" was insufficient because the investor "provide[d] no convincing details in support."); *see also, e.g., Katz*, 566 F. Supp. 3d at 107 (rejecting non-party's claim that compliance would take "seemingly limitless hours, or perhaps days" where it had neither run "any preliminary searches" nor "provided an estimate of the time or cost involved").

In addition, the record suggests the burden is modest. Lightspeed has already negotiated narrowed categories, identified the responsive universe, and built a collection and review process for Suno-related documents in connection with the first subpoena. And its 2025 production consisted of only 152 documents. Lovejoy Decl. ¶ 15; Rivera Decl. Ex. 1 at 17:16-18:5. Even if the volume of documents responsive to this Subpoena were larger, Lightspeed's initial production size suggests it will nonetheless be modest by any discovery standard. The parties' agreement that Lightspeed need not reproduce documents already produced by Suno further reduces the burden.

Lightspeed's remaining burden argument is that responding to the Subpoena would require "another privilege review." Mot. at 10. But this is a feature of *every* third-party subpoena; it is not the kind of undue burden that Rule 45 is meant to address. *See Garcia v. E.J. Amusements of New Hampshire, Inc.*, 89 F. Supp. 3d 211, 215 (D. Mass. 2015) (preparation of a privilege log "would not represent an undue burden[]" on a non-party, and a "blanket assertion of privilege is generally insufficient[]"); *Katz*, 566 F. Supp. 3d at 107 (similar).

D. **The Deposition Subpoena Is Reasonably Particular**

Lightspeed separately asks the Court to quash the Rule 30(b)(6) deposition outright, arguing that twenty topics impose a burden that outweighs any benefit and lack the "painstaking specificity" required by *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593 (C.D. Cal.

Oct. 26, 2016). Mot. at 11–13. In *HVI Cat Canyon,* the court held that witness preparation in response to the Rule 30(b)(6) subpoena would be impossible due to (i) over 60 topics, many with multiple subparts, (ii) the depth of information sought by the topics, and (iii) the need for input from an attorney or expert. 2016 WL 11683593 at *8–9. None of these issues is relevant here.

To the contrary, the designated topics are narrowly tailored to target relevant information. Six of the twenty topics are tied to specific documents Lightspeed produced in its first production. *See* Mot. Ex. G (Topics 1, 3, 9, 14, 17, and 20). Three concern specific financing rounds. *Id.* (Topics 4-6). Two concern identified individuals or a defined set of material that Suno provided in discovery. *Id.* (Topics 2, 7). And the remainder track the six agreed categories of document requests or discrete subjects, such as public statements, communications about this litigation, and Lightspeed's role on Suno's board. *Id.* (Topics 8, 10-13, 15-16, and 18-19). Topics anchored to identified documents, transactions, and time periods readily satisfy the *HVI Cat Canyon* standard. *See Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437–38 (D.P.R. 2016) (forty-three topics satisfied Rule 30(b)(6) because they were "sufficiently clear to allow [the deponent] to determine which individuals are best suited to testify on its behalf[]").

Lightspeed's contention that the deposition is cumulative of its document production, *see* Mot. at 12, ignores the reason depositions exist. "The fact that [a non-party] has already produced documents on some of the same subjects does not automatically mean that a deposition would be unreasonably cumulative or duplicative[]"; a party "should not be prevented from questioning a live corporate witness just because it is able to obtain discovery on the same topics by other methods[.]" *Thomas & Betts Corp. v. New Albertson's, Inc.*, 2013 WL 11331377, at *3, 5 (D. Mass. July 11, 2013) (denying non-party's motion to quash subpoena served after the non-party had produced documents). Because a deposition "provides a means to obtain more complete

information . . . protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances." *Transcore*, 319 F.R.D. at 437 (quotations and citations omitted). Documents do not necessarily reflect what Suno told Lightspeed orally in diligence meetings, what Lightspeed understood about Suno's training data and licensing posture, how Lightspeed evaluated the legal risk of training data, or what has been presented to Suno's Board about this litigation and licensing. That is exactly the testimony this Court identified as legitimate: what investors were told "when they showed you the pitch deck," whether they asked "the kinds of things investors might reasonably ask," and "how did they answer." Rivera Decl. Ex. 1 at 31:1–7. Nor can Suno's witnesses supply it. Suno's account of what it told investors is not a substitute for the investor's account, particularly where the investor's own documents show that the two may diverge.

E. **The Subpoena Is Proportional to the Needs of the Case**

Every Rule 26(b)(1) proportionality factor favors enforcement. The materials sought are relevant to the issues at the very center of this case: Plaintiffs allege infringement of copyrighted sound recordings by a company now valued at $5.4 billion, and Suno's fair use defense, if accepted, would sanction that conduct industry-wide. The Parties' relative access to the information weighs decisively for Plaintiffs, who have no access to Lightspeed's internal files except by subpoena. And the importance of the discovery is demonstrated, not hypothesized: investor productions in this case have already yielded evidence of Suno's knowledge and market strategy that Suno itself never produced. Rivera Decl. Exs. 3-4. Against that, Lightspeed offers an undocumented burden of running an established collection process over a defined window and preparing one witness for a one-day deposition. The proportionality analysis strongly favors Plaintiffs. *See a16z* Order at 7 ("the potential hardship to a16z does not outweigh the relevance of the discovery at issue"). Lightspeed, moreover, is not a disinterested stranger whose burden must

be weighed without regard to its stake in the outcome: it is a repeat investor in the defendant, holds a seat on its Board, shares the defendant's counsel, and stands to benefit directly if Suno's fair use defense prevails. *See Behrend*, 248 F.R.D. at 86–87 (non-party's "interest in the outcome" and alignment with a party weigh against relieving it of discovery obligations).

### F. At Minimum, the Court Should Modify Rather Than Quash the Subpoena

Rule 45(d)(3)(A) directs a court to "quash *or modify*" an unduly burdensome subpoena, and courts in this Circuit treat modification as the preferred remedy for a subpoena objectionable only in part. *See Horizons Titanium*, 290 F.2d at 425–26 (non-party bears "a particularly heavy burden" to justify quashing "as contrasted to some more limited protection[,]" and even a meritorious objection "is not here a ground for quashing the entire subpoena[]"). Lightspeed, for its part, never proposed any modifications before moving to quash, notwithstanding this Court's direction that the parties "get this sorted out." Rivera Decl. Ex. 1 at 31:24–32:1.

As Plaintiffs indicated during the parties' meet and confer, they were willing to amend several topics in an effort to avoid motion practice. *Id.* ¶ 5. Plaintiffs are still willing to make that offer, with a narrowed compromise subpoena attached as Exhibit 5 Rivera Declaration. If permitted to proceed, Plaintiffs intend to pursue the topics as reflected in the narrowed compromise subpoena..

## V. CONCLUSION

Plaintiffs respectfully request that the Court: (1) deny Lightspeed's Motion and order production of responsive documents within seven days of the Court's order; and (2) order Lightspeed to appear for its Rule 30(b)(6) deposition within fourteen days thereafter.

Dated: October 13, 2026

HUESTON HENNIGAN LLP

By: /s/ *Alexandra Arnold*

Alexandra Arnold (BBO #706208)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (617) 848-0830
aarnold@clohertysteinberg.com

Moez M. Kaba (to be admitted *pro hac vice*)
Mariah N. Rivera (to be admitted *pro hac vice*)
Alexander R. Perry (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com

Christina V. Rayburn (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
620 Newport Center Dr., Suite 1300
Newport Beach, California 92660
Telephone: (949) 356-6412
Facsimile: (888) 775-0898
crayburn@hueston.com

Rajan S. Trehan (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rtrehan@hueston.com

*Attorneys for Plaintiffs*
*UMG Recordings, Inc., Capitol Records, LLC, And Sony Music Entertainment*