# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UMG RECORDINGS, INC., et al., )
)
Plaintiffs )
) No. 1:24-CV-11611-FDS
vs. )
)
SUNO, INC., et al., )
)
Defendants. )
)
)
)

BEFORE THE HONORABLE PAUL G. LEVENSON
UNITED STATES MAGISTRATE
Status Conference
(Digital Recording)

John Joseph Moakley United States Courthouse
Courtroom No. 25
One Courthouse Way
Boston, Massachusetts 02210

August 26, 2026
2:03 p.m.

Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

P R O C E E D I N G S

THE COURT: -- the parties submission and I'm inclined to proceed with hearing briefly, first, from defendant, which is essentially moving for a protective order here. I guess I should say that we're in somewhat the same posture we've been on other matters, which is rather than a full-blown motion hearing, I think this is in the nature of a discovery conference under local Rule 37.1 in hopes of resolving a dispute without needing to resort to formal motion practice.

If indeed at the end of this the parties want to proceed to formal motion practice and get an order that could potentially be objected to before Judge Saylor, we can do that. But, for now, I think I'd just rather hear about the meat of the dispute and see if we can reach some tentative agreements.

MS. GUSHMAN: Thank you, your Honor. Robin Gushman on behalf of defendant Suno and Latham & Watkins. I'm also joined, for the record, by my colleagues Drew Diachenko and Nathan Fuller. Thank you for inviting us to discuss this today. I agree it would be helpful to have an informal conference before we potentially resort to motion practice.

As background, your Honor, on the dispute, there are actually two separate but very related disputes, one of which we submitted a letter to you regarding the Series D investor subpoena, the second of which relates to a letter that we submitted regarding some early investor subpoenas. I think it

THE COURT: Oh, is this Exhibits A through E?

MS. ARTMANN: No. This is the declaration that was submitted on August 21st via email.

THE COURT: Okay. Let me check. I may have overlooked it. Give me a moment.

12:14

So I see your dispute statement which was provided to Miss Traganos on August 21st at 21:20. Suno's protective order request also submitted on Friday, the 21st at 21:16, but I think that's all I'm seeing, at least from that brief window.

12:16 MS. ARTMANN: Your Honor, there is an email sent from Mr. Diachenko on behalf of nonparty Institutional Venture Partners, IVP, on August 21st at 7:54 Eastern Time.

THE COURT: All right.

MS. ARTMANN: And we're happy to provide that if your Honor can't locate it.

12:16

THE COURT: I apologize. I'm not seeing that document among. It may have gotten confused with the other submissions coming in late on a Friday. Miss Traganos forwarded these to me early Saturday morning. And while I was, of course, waiting at the computer for the opportunity to read these things, only two seem to have come through.

12:18

The sad thing is that's sort of true. I was writing an opinion on something else but I was indeed at the computer Saturday morning, which speaks volumes about my life that tells us nothing about what's in this declaration.

12:18

MS. ARTMANN: I can --

THE COURT: I have a very good job and I'm very happy to have it. I don't mean to be complaining but.

Is it something that I need to read -- I mean, I have tentative views about what I've heard so far but I want to give Miss Gushman an opportunity to respond before announcing views.

Is this something you can tell me the gist -- well, the gist is they don't want to and they think it's a pain in the neck. I'll start there. But do they offer particulars that spell out more of that that I ought to be taking into account?

MS. ARTMANN: Your Honor, I would recommend that your Honor take a look at the declaration. [redacted]

THE COURT: All right. Can I get you to send another copy of that? If I can get you to please cc: Paul_Levenson@mad.uscourts.gov.

MS. ARTMANN: Yes, your Honor.

THE COURT: Go ahead and send that to Miss Traganos with the cc directly to my email, please.

All right. I will look at that.

Miss Artmann, did you have one more point you wanted to make before I hear from Miss Gushman?

MS. ARTMANN: Yes. Just with respect to the IVP declaration, which I understand you haven't had a chance to review, but given that now's our time to speak on it, from our perspective, this declaration is actually supporting plaintiffs' position and supports denying the protective order.

THE COURT: And can you -- can you preview for me why you see it that way since, presumably, it wasn't written with that in mind? What is it that you're finding in there that you wanted to call to my attention?

MS. ARTMANN: [redacted]

THE COURT: And I assume you're not looking for their copies of a standardized deck. You're looking for did anybody take any notes, capture information that may have been provided in connection with the deck. Am I right about that?

MS. ARTMANN: So our requests were to capture both of

those things, but we don't think the inclusion of materials that Suno provided makes the requests unduly burdensome.

THE COURT: No. I understand that, but just in terms of cutting to the chase, to the extent that it's duplicative of material, you already have that. That's not what you're interested in. You're interested in whether there are marginal notes or in the 21st century.

I don't even know what people in the tech world use. In my world, it's going to be on some kind of chat function or shared -- shared string, but I have no idea. For all I know, they any thoughts and they get recorded directly into an AI engine that shares them as needed. But whatever form that people take notes or make comments, that's what you're interested in I assume.

MS. ARTMANN: Yes, your Honor.

THE COURT: Okay.

MS. ARTMANN: And that -- [redacted]

[redacted]

So, from our perspective, an undue burden is not substantiated by this declaration and the declaration actually demonstrates that it will not be unduly burdensome for IVP.

12:30

THE COURT: All right. Thank you.

Miss Gushman -- and I will invite you to characterize the declaration that I haven't read as well if it's going to be helpful to let me know how -- presumably, you see it differently and I'm certainly happy to hear your take on it.

12:30

MS. GUSHMAN: Thank you, your Honor.

I'll actually start by going back to something that Miss Artmann raised about the relevance of the summary that plaintiffs are seeking.

12:31

I believe I heard Miss Artmann say that they believe that this type of discovery would be relevant to analyzing the fourth fair use factor because conduct of other people is somehow relevant to that analysis.

We disagree with that. The factor four of the fair use analysis relates to the effect of the use by the defendant

12:31

on the value of the copyrighted work. So it's not clear at all why investor discovery would be relevant to that question.

Given that --

THE COURT: Wait. I'm having trouble connecting those. I -- I understand an argument that says we're talking about Suno and Suno's behavior in this marketplace and musings about what other actors in the marketplace might or might not do is either relevant under the *Campbell* cases cited by Miss Artmann or isn't or probably lies somewhere between and will involve some fairly complicated judgments about the degree to which other actors' conduct may be potentially relevant.

That -- I get that argument, but I don't get why investors in Suno would be irrelevant to a consideration of what is Suno's anticipated or ongoing behavior in the marketplace.

MS. GUSHMAN: To the extent that that is the information that plaintiffs are seeking, those kind of analyses probably have been done by many people in the industry, not just investors. And that doesn't mean that every one of those people should be subjected to a nonparty's subpoena in this case.

Here the Series D, in particular the Series D investors, have joined very recently. It's only been within the last year that they've vested in the company and any such analyses would have been done. [redacted]

[redacted]

These types of analyses are highly sensitive. I understand we have a protective order in this case, but they are still highly commercially sensitive analyses. And plaintiffs already have hundreds, thousands of hundreds of documents from Suno itself in analyzing the market and have obtained and will have obtained deposition testimony on that topic.

12:33 So given the burdens outlined, both in the declaration and that we believe are the case with respect to other investors and the limited, if any, relevance, we disagree that these subpoenas are appropriate.

THE COURT: Okay. You had a couple of other points you wanted to raise.

MS. GUSHMAN: I had a couple of other points in response to some points that Miss Artmann raised.

I think at some point there has to be a stop. I think as your Honor recognized in surveying new discovery requests, we are past that date of substantial completion. We are almost at the close of fact discovery. I understand that new things happen in the world that might be relevant to this case, but at some point we can't just, you know, have new discovery requests on a rolling basis every day.

12:34 I also understand that Miss Artmann has represented

that these requests are likely to impose a significant burden on these third parties. I don't believe that to be the case given how broad the requests are and given how long it took the plaintiffs and the third parties to negotiate these requests the last time around.

12:35 Our concern is this is going to throw the schedule into disarray. And to that point, it is Suno's position that any, you know, extended discovery on the 1201 claims should be limited to that claim.

12:35 We do not think there should be additional document discovery extensions relating to issues not relevant to that claim. We think that the current schedule should stick with respect to document discovery relating to any other issues and we're concerned that situations like the one next week with the Matrix deposition will continue to arise.

12:35 On that topic, the deponent, third-party deponent, should not be required to sit two times. I think Miss Artmann stated that potentially if some documents were produced ahead of the deposition and some documents produced after the deposition, the deponent could be called back. That is highly

12:36 inappropriate for a third party to be called back a second time and subjected to that burden given plaintiffs' delay in serving this document subpoena. It's one that they could have served months and months ago and chose not to do.

12:36 And we also note that, I think with respect to the

always a pain in the neck no matter how large or small the organization because it interrupts people in their ordinary business to do something having to do -- particularly with third parties having to do with someone else's litigation.

12:38 So I do expect plaintiffs to be mindful of the fact that they are intruding into a third-party's business, but I also expect defendants to be mindful that a degree of intrusion is inherent and the right to secure any person's testimony. And it will not behoove anyone to slow down or make the project 12:39 harder than it needs to be.

So I'm certainly not going to rule ahead of time that anybody's got carte blanche to go back for a second day of deposition. The very words strike me as highly unpleasant. So it's not something I would invite or encourage.

12:39 On the other hand, if a record yielded sufficient evidence that parties thought they could persuade me that it was necessary and appropriate, I have as recently as last month ordered a supplemental deposition in a 30(b)(6) matter where it proved necessary. But I fully expect in this case the parties 12:40 can navigate this in such a way that they can get through the depositions, get discovery done while narrowing it appropriately to things that are least likely to be duplicative and get through the depositions in time.

So the short answer is that I hear loud and clear 12:40 Miss Gushman's point that motions to compel could have been

brought sooner if plaintiffs were really intent on getting this information. And I would take that into account if the tightness of time makes it hard to get everything plaintiffs are looking for. So be it.

12:41 If you've got a deposition next week, I would generally encourage people to put much more priority on what can be done next week than on insisting on completeness. And if in the course of deposition you uncover evidence that powerfully suggests there's important new things to be done, 12:41 maybe I could be persuaded, but I generally -- I don't see that often. I see people argue that a lot more often than I agree with it.

So I think the goal is to get this work done and to accept that this work will not be done perfectly. Perfect just 12:41 isn't an available standard for gathering information, but I do think, I may have the anecdote wrong, but I have a recollection that some of the -- some comments about where Suno intended to get its data and whether it would be essentially mined or farmed from YouTube was a point that was discussed essentially 12:42 in a sideways matter.

Am I right recalling that was with an investor, Miss Artmann?

MS. ARTMANN: Yes. [redacted]

12:43

THE COURT: Right. Right. So that -- that strikes me as the kind of thing that is more likely found when you ask people what did they say when they showed you the pitch deck.

Did you ask them any questions about the kinds of things investors might reasonably ask about on the pitch deck? And, if so, how did they answer? Those kind of things do strike me as potentially relevant.

Certainly that one and maybe we're going to end up with exactly one instance of relevant information in that context, but that's the kind of thing that I do think plaintiffs are entitled to explore, but I think the best way to limit it -- I'm not a fisherman but my son is and every case I deal with somebody invokes fishermen and fishing because that's how people talk about discovery. I'm sort of inclined to the view of it is all fishing and the question is is it smart fishing, reasonably targeted with appropriate bait or is it, you know, five-mile gill nets through the Pacific Ocean.

So that's more the standard I tend to use. I assume that this is fishing, but the best way I know to keep fishing from going on forever is to set time limits and time constraints. So I'm not moving the timing. And I'd have to have very good reason to be persuaded that the timing should be moved.

And I expect the parties to work as best they can to minimize burden on third parties and to get this sorted out in

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS )

I, Kristin M. Kelley, certify that the foregoing transcript is a true and correct transcript of the audio-recorded proceedings held in the above-entitled matter to the best of my skill and ability.

/s/ Kristin M. Kelley — August 30, 2026

Kristin M. Kelley, RPR, CRR — Date
Official Court Reporter