**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>Defendant. | Civil Action No. 1:26-MC-91532-FDS<br><br>(Underlying Case Pending in U.S. District Court for the District of Massachusetts: *UMG Recordings, Inc. v. Suno*, *Inc.*, Civil Action No. 1:24-cv-11611-FDS) |

**NON-PARTY LIGHTSPEED MANAGEMENT COMPANY, L.L.C.'S**
**<u>REPLY IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' SUBPOENA</u>**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Offer No Justification for Their Delay ..... 2

B. The Discovery Requested in the New Document Subpoena Is Marginally Relevant and Unreasonably Cumulative ..... 2

1. Post-Suit Investor Documents Shed No Light on Suno's Willfulness ..... 3

2. Lightspeed's Analyses Are Not Needed to Assess Market Harm ..... 4

3. Plaintiffs Have Not Shown That Lightspeed Holds Unique Information Warranting a Second Production ..... 5

4. Plaintiffs Offer No Valid Reason to Re-Serve Identical Requests ..... 7

C. The New Document Subpoena Is Unduly Burdensome ..... 8

D. The New Deposition Subpoena Should Be Quashed ..... 9

E. The "Compromise" Subpoena Does Not Cure These Defects ..... 11

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) ....................11

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ....................4

*AngioScore, Inc. v. TriReme Med., Inc.*,
2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) ....................11

*Day v. Geico Cas. Co.*,
2023 WL 5505849 (C.D. Cal. Aug. 16, 2023) ....................10

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
89 F. Supp. 3d 211 (D. Mass. 2015) ....................9

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) ....................4

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
333 F.3d 38 (1st Cir. 2003) ....................9

*Horizons Titanium Corp. v. Norton Co.*,
290 F.2d 421 (1st Cir. 1961) ....................12

*In re Application of Republic of Ecuador v. Douglas*,
153 F. Supp. 3d 484 (D. Mass. 2015) ....................7

*Katz v. Shell Energy N. Am. (US), LP*,
566 F. Supp. 3d 104 (D. Mass 2021) ....................6

*LightForce Orthodontics, Inc. v. Align Tech., Inc.*,
2026 WL 1133400 (D. Mass. Apr. 27, 2026) ....................4

*Mango v. BuzzFeed, Inc.*,
316 F. Supp. 3d 811 (S.D.N.Y. 2018) ....................3

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ....................4

*Nova Biomedical Corp. v. i-STAT Corp.*,
182 F.R.D. 419 (S.D.N.Y. 1998) ....................7

*Pearson v. University of Chicago*,
2021 WL 194725 (D. Conn. Jan. 20, 2021) ........ 8

*Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*,
2024 WL 3925704 (N.D. Cal. Aug. 23, 2024) ........ 4, 5

*Solamere Cap. v. DiManno*,
621 F. Supp. 3d 152 (D. Mass. 2022) ........ 7, 9, 12

*Sony BMG Music Ent. v. Tenenbaum*,
660 F.3d 487 (1st Cir. 2011) ........ 3

*Trump v. Vance*,
480 F. Supp. 3d 460 (S.D.N.Y. 2020) ........ 7

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014) ........ 6

*United States v. HVI Cat Canyon, Inc.*,
2016 WL 11683593 (C.D. Cal. Oct. 26, 2016) ........ 10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ........ 5

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
2007 WL 218771 (N.D. Cal. Jan. 29, 2007) ........ 5

**RULES**

Fed. R. Civ. P.
26(b)(1) ........ 8
26(b)(2)(C)(ii) ........ 2

## I. INTRODUCTION

Plaintiffs' Opposition further confirms why Plaintiffs' New Subpoena should be quashed. Plaintiffs concede that the six document requests newly directed at non-party Lightspeed are "identical" to those for which Lightspeed has already produced over 150 documents totaling nearly 1,300 pages. Dkt. 19 ("Opp."). Plaintiffs offer no explanation for waiting months after Suno's Series C and Series D funding rounds closed before issuing the New Subpoena. And Plaintiffs do not dispute that the discovery they now seek concerns a time period well over a year after the Complaint was filed—which means any discovery will say nothing about Suno's state of mind during the alleged infringement. Plaintiffs already have Lightspeed's prior production, in addition to party discovery available from Suno itself relating to Suno's alleged willfulness and any market harm resulting from its AI music-generation service. A non-party should not be forced to reopen its document production and prepare a corporate designee on twenty (or, under Plaintiffs' "compromise," sixteen) broad deposition topics on the premise that Plaintiffs are entitled to chase a "moving target." Opp. at 11.

Plaintiffs' core response to Lightspeed's motion is a procedural one: they claim that Judge Levenson already "considered and rejected" each of the arguments in Lightspeed's motion to quash. Opp. at 3. That did not happen. The August 26, 2026 hearing concerned *Suno's* request for a protective order, and the Court's principal concern was whether *Suno* had standing to object to subpoenas issued to non-party investors. Indeed, Judge Levenson invited the investors to file their own motions seeking relief from the Court—which is exactly what Lightspeed did. And far from blessing the New Subpoena as served, the Court directed Plaintiffs to "work as best they can to minimize burden on third parties." Rivera Decl. Ex. 1 at 31:24-25. Lightspeed is entitled to Rule 45's protections as a non-party in its own right. Lightspeed's motion to quash should be granted in full.

## II. ARGUMENT

### A. Plaintiffs Offer No Justification for Their Delay

Rule 26(b)(2)(C)(ii) requires courts to limit discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). In their Opposition, Plaintiffs assert they "could not have compelled the production of materials that did not yet exist." Opp. at 9. But Lightspeed does not contend that Plaintiffs should have sought Series C and D materials in the Original Subpoena. The issue is that Plaintiffs waited roughly nine months after the Series C closing, and more than two months after the Series D closing, to serve a "refresh" subpoena on Lightspeed. *See* Dkt. 1 ("Mot.") at 5. Plaintiffs' delay should weigh heavily against imposing the resulting burden on a non-party.[1] *See* Rivera Decl. Ex. 1 at 29:25-30:2 (Court stating that "motions to compel could have been brought sooner if plaintiffs were really intent on getting this information").

Nor does Plaintiffs' explanation justify the New Deposition Subpoena. Even Plaintiffs' "compromise" deposition topics reach back to January 1, 2022, and seek testimony about Lightspeed's pre-investment relationship with Suno, its May 2024 Series B investment, and documents Lightspeed produced in October 2025—matters Plaintiffs could have explored long before August 2026. Rivera Decl. Ex. 5 at 8–9.

### B. The Discovery Requested in the New Document Subpoena Is Marginally Relevant and Unreasonably Cumulative

Setting aside Plaintiffs' unjustified delay, the New Document Subpoena seeks discovery that is—at best—tangentially relevant and unreasonably duplicative of what Lightspeed has already produced. It should be quashed on that basis.

[1] Plaintiffs argue that the "then-deadline for the close of fact discovery . . . has since been extended by almost two months," Opp. at 2, but the scheduling amendment Plaintiffs cite left the close of fact discovery "not implicated by Plaintiffs' § 1201 claim" at September 30, 2026.

### 1. *Post-Suit Investor Documents Shed No Light on Suno's Willfulness*

Plaintiffs argue that documents about Suno's training data and the risks of investing in Suno "bear directly" on Suno's willfulness. Opp. at 11–12. But willfulness turns on the *infringer's* knowledge or recklessness at the time of the alleged infringement, not the impressions of a non-party investor years later. *See Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) ("An infringement is willful when a defendant engaged in acts that infringed a copyright and knew that those actions may infringe the copyright.") (citation omitted). Plaintiffs' reliance on *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 812 (S.D.N.Y. 2018), is misplaced. There, the testimony at issue came from a member of BuzzFeed's own legal department who had investigated the allegedly infringing photograph and had personal knowledge of BuzzFeed's practices before and after the alleged infringement. *Id.* at 812, 815. *Mango* thus concerned the infringer's own conduct, as known to its own employee—not a non-party's later impressions. Lightspeed is a non-party, minority investor, not Suno's in-house counsel; it has never directed or controlled Suno's day-to-day operations, including the development or training of Suno's AI service; and it does not have comparable insight into Suno's internal operations.

Further, to the extent any Lightspeed document could bear on Suno's state of mind at the time of the alleged infringement, Plaintiffs *already have* Lightspeed's production through June 6, 2025. Mot. at 3. That production spans more than a year after Lightspeed's investment and covers the period surrounding the events at issue in the underlying litigation. Suno developed its service by May 2023 and launched it publicly in July 2023. Mot. at 2. Documents generated in connection with funding rounds that closed in November 2025 and June 2026—over two years after Suno's launch—shed no light on Suno's state of mind when it developed the AI service at issue.

### 2. *Lightspeed's Analyses Are Not Needed to Assess Market Harm*

Plaintiffs separately contend that investor materials are "among the best evidence for the market harm analysis." Opp. at 10. Not so. The fourth fair use factor "focuses upon the 'effect' of the copying in the 'market for or value of the copyrighted work.'" *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 4 (2021). That question can more than adequately be answered through discovery into Suno's (and Plaintiffs') own financial data, witness testimony, and expert discovery, not through expanded discovery into a non-party's internal analyses of Suno's business model, which would say little (if anything) about any supposed harm caused by Suno's conduct. The same is true for the first fair use factor, which "relates to the problem of substitution." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023). Indeed, courts have recognized that a non-party's informal and internal analyses of market impact are not proper substitutes for expert testimony. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003);[2] *see also LightForce Orthodontics, Inc. v. Align Tech., Inc.*, 2026 WL 1133400, at *4–5 (D. Mass. Apr. 27, 2026) (quashing non-party subpoena for market analyses in an antitrust case where "party data, including [the requesting party's] own data, as well as expert analysis are superior and less burdensome sources" than compelling a non-party's internal competitive assessments).

Courts have therefore declined to compel investors' internal analyses where the requesting party has alternative means of discovery. *See Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 3925704, at *4–5 (N.D. Cal. Aug. 23, 2024) (where the requesting party has "the same underlying data as the investors," the investors' "projections are irrelevant");

---

[2] Plaintiffs' attempt to distinguish *Mattel*, Opp. at 12, addresses the district court's finding on harassment, on which Lightspeed does not rely. Lightspeed cites *Mattel* for its separate holding that a non-party subpoena seeking information on "the market for" the works at issue "appeared to be seeking 'expert' testimony," contrary to Rule 45's protections. *Mattel*, 353 F.3d at 814.

*Visto Corp. v. Smartner Info. Sys., Ltd.*, 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007). Plaintiffs' attempt to distinguish *SARA* only underscores the point: there, as here, the investors had already produced documents concerning their investment decisions, and the court declined to order more. *See* Opp. at 15–16; *SARA*, 2024 WL 3925704, at *4. There is no question that alternative discovery is available here—Plaintiffs can obtain (and have obtained) these materials through party and other non-party discovery.

**3. *Plaintiffs Have Not Shown That Lightspeed Holds Unique Information Warranting a Second Production***

Plaintiffs' Opposition relies heavily on a non-binding order compelling discovery from Andreessen Horowitz ("a16z"), claiming it involved "materially identical facts." Opp. at 11 (citing Rivera Decl. Ex. 2). Plaintiffs ignore, however, that the compelled a16z subpoena was the first (and only) subpoena served on that investor. *Id.* Here, Lightspeed has already negotiated, collected, reviewed, and produced over 150 documents (totaling nearly 1,300 pages) across the same six categories at issue in the New Subpoena. The a16z order is distinguishable on that basis alone.[3]

Plaintiffs also emphasize that Lightspeed holds a seat on Suno's Board, Opp. at 4, but Board materials are Suno's own records, all available from Suno. And any communications reflecting Lightspeed's early relationship with Suno were encompassed by the Original Subpoena. A "refreshed" production in response to the New Subpoena is unlikely to contain any material information regarding Suno's initial data acquisition practices, alleged infringement, market entry

---

[3] *Viacom Int'l, Inc. v. YouTube, Inc.*, on which the *a16z* Court relied, is also inapt. 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008). In that case, the at-issue venture firms had a particularly close relationship with the defendant, including participating in board meetings, managing YouTube's acquisition by Google, and evaluating shareholder obligations under the merger agreement at issue, justifying broader production. *See id.* at *2–*5.

plans, or any other information that has not been produced. Lightspeed's prior productions make this clear. For example, Plaintiffs rely upon a document where Suno initially presented itself to Lightspeed as a "super label." Opp. at 10. But Plaintiffs do not explain why this document justifies the later discovery requested by the New Subpoena. To the extent Plaintiffs are suggesting that discovery is needed to confirm whether Suno, in fact, became a "super label," Plaintiffs should have sought that discovery from Suno itself—not Lightspeed. These documents otherwise show that Lightspeed's prior production already provided Plaintiffs with what they claim to need.

Perhaps recognizing that they should have obtained this discovery from Suno, Plaintiffs point to cases saying that there is "no absolute rule" against seeking discovery from a non-party that can be obtained from a party. But none of these cases says that a non-party that has already undergone the burden of collecting and producing documents across the same categories *must* do so again. *See Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *4 (D. Mass. Sept. 8, 2014); *Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 106 (D. Mass. 2021). Plaintiffs' failure to obtain the information they seek in party discovery does not justify additional burdens on Lightspeed.

Judge Levenson's remarks at the August 26 hearing regarding Suno's motion for a protective order also do not support Plaintiffs' demand. Judge Levenson observed that Plaintiffs might explore whether investors took notes or captured information about what Suno told them when it presented its pitch deck. Opp. at 5–6 (citing Rivera Decl. Ex. 1 at 22:21–24, 30:16–31:11). But that does not weigh against quashing here. Lightspeed already produced these exact types of materials for the period when Suno's training practices and pre-suit conduct were actually at issue. *See* Mot. at 3, 8. A desire to fish for more of these materials from the post-complaint period does not justify Plaintiffs' attempt at a second bite at the apple from Lightspeed.

#### 4. *Plaintiffs Offer No Valid Reason to Re-Serve Identical Requests*

While Plaintiffs readily concede that the requests in the New Subpoena are "identical" to those Lightspeed already answered, they suggest their demands are proper because a new time period means there are likely to be additional responsive documents. Opp. at 12-13. In effect, Plaintiffs argue that they are entitled to duplicative discovery simply because Suno's business continues to exist and expand. Opp. at 11. That a company grows during litigation does not license a plaintiff to serve successive non-party subpoenas to "refresh" the record indefinitely; courts routinely quash subpoenas seeking a second bite at the apple. *See Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (quashing second subpoena that largely mirrored the original requests, often extending only the time period); *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 161 (D. Mass. 2022). Plaintiffs' reliance on *Trump v. Vance*, Opp. at 3, is misplaced; that case concerned a grand jury subpoena and did not apply the proportionality limits of Rules 26 and 45. 480 F. Supp. 3d 460 (S.D.N.Y. 2020).

Plaintiffs also improperly suggest that because Lightspeed agreed to the six categories in response to a different subpoena, the requests are necessarily "relevant and proportional" now. Opp. at 12. However, Lightspeed's prior negotiated agreement to make a production for a defined period, in order to avoid motion practice, is not a concession that it must repeat that production on demand. Plaintiffs' cited authority, *In re Application of Republic of Ecuador v. Douglas*, does not support expanded discovery here. 153 F. Supp. 3d 484 (D. Mass. 2015). There, the requesting party sought the facts and data underlying an expert's reports that had never been produced in the proceeding, and the court found those reports independent and distinct from other experts' work. *Id.* at 487, 492. Here, Plaintiffs readily admit that they seek the *same categories of discovery* from the *same non-party* that has already produced over 150 responsive documents.

Finally, Plaintiffs newly claim that the New Subpoena also seeks to "test the veracity and completeness" of Suno's production. Opp. at 15. Setting aside whether that is even a proper basis for discovery under Rule 45,[4] Plaintiffs never expressed this purpose during the parties' conferrals, despite the fact that fact discovery on the claims and defenses to which the New Subpoena is directed was set to close on September 30, 2026. If Plaintiffs had concerns about the "veracity" of Suno's production, they should have raised those issues with the Court.

**C. The New Document Subpoena Is Unduly Burdensome**

Even if any of the information sought in the New Document Subpoena were relevant and nonduplicative, the New Document Subpoena fails the proportionality inquiry mandated by Rule 26(b)(1), and falls far short of Judge Levenson's directive to minimize the burden imposed on non-parties. The Rule requires courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each factor weighs against requiring Lightspeed to comply with the New Document Subpoena.

Plaintiffs invoke Suno's valuation and reference previous investor productions to support the "importance" of the discovery they seek from Lightspeed. Opp. at 19. But none of this demonstrates the importance of a *second* production from a non-party, minority investor. And the parties' relative access to information favors Lightspeed: much of the discovery sought in Plaintiffs' New Document Subpoena is material that Plaintiffs could easily obtain through party discovery. It is well established that a motion to quash should be granted where the requested

[4] Plaintiffs' authority is inapposite. In *Pearson v. University of Chicago*, the non-party's production was used to identify documents a party had affirmatively withheld. 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021). Plaintiffs point to nothing in Lightspeed's prior production that suggests Suno withheld relevant discovery such that a second subpoena is appropriate.

discovery is at best tangential and cumulative. *See, e.g., Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 42 (1st Cir. 2003); *Solamere*, 621 F. Supp. 3d at 160–62.

Plaintiffs also imply that Lightspeed's compliance with the New Document Subpoena could not impose any significant burden because Lightspeed's first production was "only 152 documents." Opp. at 17. Notwithstanding Lightspeed's disagreement with the characterization of its production as minimal, Plaintiffs ignore that the New Document Subpoena covers a period of more than a year, two additional financing rounds, and Lightspeed's Board-related materials, all of which would require collection and a significant review for both responsiveness and privilege. *See* Lovejoy Decl. ¶¶ 5–6. Further, even with a production of 152 documents, Plaintiffs ignore that a party must review *many* more to determine responsiveness and assess privilege. Plaintiffs' overbroad New Document Subpoena would require Lightspeed to redo this process for a period that post-dates the core events relevant to this dispute—all while incurring the substantial costs associated with collecting, hosting, reviewing, and producing documents. *See* Lovejoy Decl. ¶ 6. Nor does the parties' prior agreement that Lightspeed need not produce documents Suno already produced meaningfully reduce that burden—Lightspeed would nevertheless need to incur costs associated with deduplication.

Plaintiffs also ignore that collection from Suno's later fundraising rounds would likely require more substantial privilege review, as responsive documents may include ongoing communications with counsel during the pendency of the underlying litigation. That is not the routine privilege review that is a "feature of every third-party subpoena." Opp. at 17 (citing *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 89 F. Supp. 3d 211, 215 (D. Mass. 2015)).

**D. The New Deposition Subpoena Should Be Quashed**

Plaintiffs' New Deposition Subpoena is also improper and should be quashed. Six topics are tied to documents Lightspeed already produced (Topics 1, 3, 9, 14, 17, and 20). Those

documents speak for themselves, Plaintiffs have had them since October 2025, and Plaintiffs identify nothing about them requiring a corporate witness. Opp. at 18. Three topics broadly concern specific financing rounds (Topics 4–6), including the Series C and D rounds that post-date the filing of this lawsuit.[5] The remainder track the same six document categories or concern Lightspeed's pre-investment relationship with Suno, its role on Suno's Board, and communications about litigation risk (Topics 8, 10–13, 15–16, and 18–19).[6] Board materials and Suno's communications about the litigation are in Suno's possession and could have been obtained from Suno. Plaintiffs offer no reason why Suno's witnesses could not address the same subjects, and the remaining topics concern post-suit events of marginal relevance. Plaintiffs have not shown "in a non-conclusory manner the importance of any non-privileged and unique testimony" from Lightspeed. *Day v. Geico Cas. Co.*, 2023 WL 5505849, at *3 (C.D. Cal. Aug. 16, 2023).

In defense of their sweeping deposition subpoena, Plaintiffs read *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593 (C.D. Cal. Oct. 26, 2016), as turning on topic count alone. Opp. at 18. But Lightspeed's reliance on *HVI* was based on the analogous burden of preparing a witness across the *breadth and depth* of the noticed topics—twenty topics spanning more than four years, ranging from Suno's training data to the cost and availability of licensing sound recordings to Suno's impact on the music industry. Mot. at 11–12. Many of those subjects belong in party discovery or expert testimony, not a non-party Rule 30(b)(6) deposition.

---

[5] These Topics seek broad testimony on Lightspeed's overall investment efforts without any limitation as to scope, such that it would be nearly impossible to adequately prepare a witness. *See, e.g.*, Topic 4 ("YOUR investment in SUNO during its Series B round that closed in May 2024, including YOUR role as a lead investor.").

[6] Certain of the information requested in Plaintiffs' topics may not even be in Lightspeed's possession, custody, or control. *See, e.g.,* Topic 8 ("SUNO's TRAINING DATA, including YOUR awareness, knowledge, and understanding of the contents, acquisition, sources, and development of SUNO's TRAINING DATA.").

Indeed, Plaintiffs' primary argument is that the documents Lightspeed has produced "do not necessarily reflect what Suno told Lightspeed orally," and that Suno's witnesses cannot supply that information because Lightspeed's documents show the two accounts "may diverge." Opp. at 19. Even assuming *arguendo* that this is the case, Suno's witnesses were, by definition, present for any such conversations, and Plaintiffs have deposed or can depose them. And if, as Plaintiffs purport, Suno's account contradicts Lightspeed's document production, Plaintiffs already have the requisite evidence to establish that contradiction. The value of non-party testimony here is "low or at best unknown," and any relevant testimony is obtainable from party witnesses. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411 (C.D. Cal. 2014); *see also AngioScore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014).

**E. The "Compromise" Subpoena Does Not Cure These Defects**

Plaintiffs' eleventh-hour "compromise subpoena" also should be rejected. Plaintiffs claim Lightspeed "never proposed any modifications" to the New Subpoena before moving to quash it. Opp. at 20. But during the parties' September 11, 2026 meet-and-confer, Lightspeed informed Plaintiffs that it would consider narrowed topics if Plaintiffs wanted to send a proposal. Gushman Decl. ¶ 3. Plaintiffs did not send one, so Lightspeed filed its motion. *Id.*

In any event, Plaintiffs' proposed modifications do not suffice: the Compromise Subpoena remains overbroad and seeks cumulative information available from Suno. It trims the deposition topics from twenty to sixteen, yet retains a default time period of January 1, 2022 to the present. Rivera Decl. Ex. 5 at 8–9. It still seeks broad and generalized testimony on each of Lightspeed's Series B, C, and D investments; on Suno's training data, including its "contents, acquisition, sources, and development"—matters squarely within Suno's own knowledge; and on Lightspeed's understanding of Suno's impact on the music industry and the market for its outputs, which are the province of expert testimony. *Id.* (Topics 3–5, 7, 10, 12). And it still includes all six document

requests verbatim. *Id.* at 10–11 (Requests 1–6). The only change to the document requests is to move the start date of the relevant time period from November 1, 2024 to June 7, 2025—a concession that the New Document Subpoena overlapped Lightspeed's prior production by seven months. *Id.* at 10.

Plaintiffs claim that each narrowed deposition topic in the Compromise Subpoena is tied to documents Lightspeed has already produced, to one of the six agreed document categories, or to Lightspeed's role on Suno's Board. Opp. at 3. But this argument is belied by the topics themselves, which in most cases are not so limited. Moreover, that description confirms the problem: the compromise topics either revisit documents Plaintiffs have had for a year, duplicate the categories for which Lightspeed has already produced documents, or concern matters available from Suno. The Compromise Subpoena, in other words, preserves the same scope that renders the New Subpoena cumulative and of marginal relevance. To be sure, the Compromise Subpoena does not reflect a party working "as best they can to minimize burden on third parties." Rivera Decl. Ex. 1 at 31:24-25.

Nor does *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421 (1st Cir. 1961), justify Plaintiffs' proposed modification; here, defects run to the subpoena as a whole rather than to a discrete part of it. Instead, *Solamere* is instructive. There, the court quashed a subpoena to a non-party investment fund even after the requesting party offered to narrow it to the fund's due diligence file and report, because the burden of narrower discovery still outweighed any likely benefit. *Solamere*, 621 F. Supp. 3d at 162. The same result follows here, and the New Subpoena, including the Compromise Subpoena, should be quashed in full.

## III. CONCLUSION

For the foregoing reasons, Lightspeed respectfully requests that the Court quash the New Subpoena in its entirety.

Dated: October 20, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: */s/ Robin L. Gushman*

Robin L. Gushman (*pro hac vice*)
*robin.gushman@lw.com*
Brittany N. Lovejoy (*pro hac vice*)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

*Attorneys for Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent October 20, 2026 to those identified as nonregistered participants.

By: */s/ Robin L. Gushman*
Robin L. Gushman