**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>Defendant. | Civil Action No. 1:26-MC-91532-FDS<br><br>(Underlying Case Pending in U.S. District Court for the District of Massachusetts: *UMG Recordings, Inc. v. Suno*, *Inc.*, Civil Action No. 1:24-cv-11611-FDS) |

**DECLARATION OF BRITTANY N. LOVEJOY IN SUPPORT OF NON-PARTY LIGHTSPEED MANAGEMENT COMPANY, L.L.C.'S REPLY IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' SUBPOENA**

I, Brittany N. Lovejoy, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner with the law firm Latham & Watkins LLP ("Latham"). I represent Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners ("Lightspeed") in the above-captioned matter, including in connection with Lightspeed's response to Plaintiffs' first subpoena. Unless otherwise stated, I have personal knowledge of the facts set forth herein based on my role as counsel to Lightspeed, and I respectfully submit this Declaration in support of Non-Party Lightspeed's Reply in Support of its Motion to Quash the subpoena issued by Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment ("Plaintiffs").

2. Lightspeed is a venture capital firm that focuses on seed-, early-, and growth-stage investments. Lightspeed is a non-party in the above-captioned litigation.

3. On May 15, 2025, Plaintiffs served Lightspeed with their first document subpoena, which contained one broad request for "All DOCUMENTS and COMMUNICATIONS

RELATED TO SUNO." The parties met and conferred regarding the scope of production and ultimately agreed to six categories. *See* ECF No. 1 at 8.

4. In response to Plaintiffs' first subpoena, Lightspeed, with Latham's assistance, collected, reviewed, and produced 152 documents—totaling 1,259 pages—on October 31, 2025. Lightspeed's collection, review, and production took several months, and Lightspeed incurred substantial outside counsel and document vendor fees.

5. On August 24, 2026, Plaintiffs issued another subpoena (the "New Subpoena"). This New Subpoena contained six document requests that were identical to the six agreed-upon categories from the first subpoena, except they sought documents from November 1, 2024 through the present day. The New Subpoena also sought Rule 30(b)(6) deposition testimony on twenty topics from January 1, 2022 to the present. On October 13, 2026, Plaintiffs filed an opposition to Lightspeed's Motion to Quash the New Subpoena, attaching a "Compromise Subpoena." The Compromise Subpoena contains the same six document requests as the New Subpoena, but slightly narrows the relevant time frame to June 7, 2025 through the present day. It slightly modifies the deposition topics (trimming from twenty to sixteen topics), but retains a default time period of January 1, 2022 to the present.

6. Complying with the New Subpoena or the Compromise Subpoena would require Lightspeed to repeat the process it completed in October 2025. Lightspeed and its counsel would need to again identify custodians, collect documents from Lightspeed employees, host these documents with a third-party document vendor, and review these documents for responsiveness, confidentiality, and privilege. Based on Latham's assistance with the first subpoena, and my understanding from Lightspeed, that effort would require diverting Lightspeed personnel from their day-to-day responsibilities. I understand Lightspeed's documents relating to its investments

in Suno also likely contain communications with its counsel, including Latham, which would require a more robust privilege review. Relatedly, I understand from Lightspeed that its files contain confidential and potentially privileged materials relating to its broader investment portfolio that are unrelated to the claims and defenses at issue in this litigation. The review and redaction of such materials would impose a substantial additional burden on Lightspeed, requiring considerable time and expense. Based on my understanding of the prior collection, review, and production process, I estimate that complying with the New Subpoena or the Compromise Subpoena could take several weeks (or longer), and Lightspeed would incur additional outside counsel and document vendor fees associated with collecting, hosting, reviewing, and producing documents.

7. The New Subpoena's (and Compromise Subpoena's) demand for Rule 30(b)(6) testimony would impose a separate, significant burden on Lightspeed. In responding to a Rule 30(b)(6) subpoena, Lightspeed must designate one or more witnesses to testify on its behalf and must prepare those witnesses to testify not only to their personal knowledge, but also to all information known or reasonably available to Lightspeed on each of the noticed topics. Based on my experience, preparing any such designee would be time-intensive, as Lightspeed would need to expend resources identifying the appropriate designee(s), gather information from other Lightspeed personnel with knowledge of the noticed topics, and subsequently prepare the designee(s) for deposition with the assistance of outside counsel. I estimate that preparing a single designee would require at least 10 hours of that designee's time, plus additional time from other Lightspeed personnel who may need to be consulted during preparation sessions, followed by up to a full day of testimony. Those hours would come directly from time the designee(s) and other personnel would otherwise spend managing Lightspeed's funds and supporting its portfolio

companies. Lightspeed would also incur outside counsel fees associated with identifying, preparing, and defending each designee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of October 2026, in Lafayette, CA.

*/s/ Brittany N. Lovejoy*

Brittany N. Lovejoy