**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re SUBPOENA to LIGHTSPEED VENTURE PARTNERS | Case No. 1:26-MC-91532<br><br>(Underlying Case Pending: *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611-FDS) |
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>Defendant. | |

# PLAINTIFFS' OPPOSITION TO NON-PARTY LIGHTSPEED MANAGEMENT COMPANY, LLC'S MOTION TO SEAL

Non-party Lightspeed Management Company, L.L.C. ("Lightspeed") asks the Court to keep from public view Exhibits 3 and 4 to the Declaration of Mariah Rivera (Dkt. 20) (the "Exhibits") and every reference to them in Plaintiffs' Opposition to Lightspeed's Motion to Quash (Dkt. 19). The only reason offered is that Lightspeed designated the Exhibits "Highly Confidential – Attorneys' Eyes Only" and that their disclosure "could" give unnamed competitors "insight" into how Lightspeed evaluates investments. Dkt. 28 at 2–4. That conclusory assertion is incorrect as evidenced by the documents at issue and, in any event, is insufficient to seal under settled First



0

Circuit law. Put simply, the Lightspeed Exhibits undermine Suno's defenses in this case and are inconsistent with certain of its legal positions, but that is not enough to merit sealing. Lightspeed's motion should be denied for multiple independent reasons.

### A. Lightspeed Offers Only Conclusory Assertions From Outside Counsel

Public access to court filings is the rule, and "the scales tilt decidedly toward transparency." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). For judicial records, "[o]nly the most compelling reasons can justify non-disclosure[.]" *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (quotation omitted). "[T]he party seeking a protective order has the burden of showing that good cause exists[,]" and "if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (quotation omitted). Good cause requires "a particular factual demonstration of potential harm, not . . . conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986).

Lightspeed's showing consists of a single declaration from Robin L. Gushman, a Latham & Watkins partner who serves as Lightspeed's litigation counsel. Dkt. 28-1 ¶ 1. Ms. Gushman does not claim to work in venture capital, to have participated in the Suno investment, or to know how Lightspeed's competitors behave. Her testimony is expressly second-hand: "I understand that the venture capital market in which Lightspeed operates is intensely competitive," and Lightspeed's diligence framework is something "which I understand Lightspeed built through a substantial investment of time, expertise, and resources." *Id.* ¶ 7. No one from Lightspeed, not the partner who sourced the deal, nor anyone on its investment committee, has submitted a declaration.

Even taken at face value, the declaration is a generic list of things that "could" happen to any investor whose documents became public: competitors "could predict Lightspeed's positions,"



0

counterparties "could" negotiate better terms, and others "could copy" its diligence framework. *Ibid.* It does not identify a single passage in either Exhibit that reveals a proprietary "methodology," "benchmark," or "threshold"; does not explain how a 2024 memorandum about one closed transaction would let anyone predict Lightspeed's conduct in a future, unrelated deal; and does not identify any competitor or transaction that would be affected. *Ibid.* It is the same boilerplate that could be offered to seal any document any investor has ever written.

The First Circuit has rejected this approach. In *Standard Financial*, the court affirmed unsealing where the parties resisting disclosure offered only "broad generalization[s]" of harm, "filed no affidavits and offered no meaningful details[,]" and were "wholly unable to point the court below to a single particularized harm[.]" 830 F.2d at 412. "We decline to accept conclusory assertions as a surrogate for hard facts. In the absence of some compendium of chapter and verse—a demonstration that cognizable harm is lurking in the background—the appellants' orotund protests avail them naught." *Id.* Similarly in *McKee*, the court affirmed unsealing of an advocacy organization's internal strategic "'playbook'" because it "disclose[d] primarily . . . priorities and expenditures in past election cycles," and there was "little among them that could advantage [its] opponents going forward." 649 F.3d at 71-72. The same is true here.

Courts in this District routinely deny impoundment on similar showings. *See, e.g., Roy v. FedEx Ground Package Sys., Inc.*, 2023 WL 4186291, at *4 (D. Mass. June 26, 2023) (assertions of competitive harm "nonspecific and overbroad"). Lightspeed's request fails at the threshold.

### B. The Exhibits Principally Contain Information About Suno and a Closed 2024 Deal

Lightspeed describes the Exhibits as revealing "Lightspeed's investment priorities, risk tolerance, and its valuation methods." Dkt. 28 at 2. The documents themselves tell a different story. Their content is overwhelmingly about Suno: what Suno's product does; who its founders

are; how many users and how much revenue Suno had in the first quarter of 2024; when Suno planned to train and release new models; which companies Suno competed with; and how Suno described its ambitions to Lightspeed—including, as Lightspeed has publicly acknowledged, as a would-be "super label." Dkt. 27 at 6. They also discuss the legal risk associated with how Suno's models were trained.

None of that is Lightspeed's competitive secret. It is information about the Defendant in the underlying action, and about the Defendant's knowledge of the legal risk of the conduct at issue in this case. Suno, the party whose information this is, did not ask the Court to seal any of it, even though Suno and Lightspeed share counsel. A non-party cannot shield a defendant's business plans and risk awareness from public view merely because the non-party wrote them down. *See McKee*, 649 F.3d at 72 (rejecting asserted third-party interests where a party "failed to make a compelling case" that the third parties had "any reasonable privacy concerns").

Nor do the Exhibits disclose any "valuation method[]" or "diligence framework" in any meaningful sense. Dkt. 28 at 4. They contain no model, formula, scoring rubric, or set of benchmarks. The few passages that concern Lightspeed's own deal—the negotiated price and terms of the Series B—describe a single, closed transaction from early 2024. That transaction has since been overtaken by two later financing rounds, publicly reported at valuations of $2.45 billion and $5.4 billion. Information about a price Lightspeed agreed to pay in 2024 for a company now valued at roughly ten times that amount reveals nothing about how Lightspeed presently negotiates. The metrics recited in the Exhibits are similarly stale: they reflect Suno's user base and revenue run rate in the first quarter of 2024, figures long since eclipsed by Suno's own public statements about its growth. Stale, transaction-specific information of this kind is the paradigm of

material that "could [not] advantage [a party's] opponents going forward." *McKee*, 649 F.3d at 71–72.

**C. Lightspeed Has Already Disclosed the Substance of the Exhibits Publicly**

Lightspeed's request is also undermined by its own public filings and statements. In its unsealed reply brief Lightspeed told the public that "Plaintiffs rely upon a document where Suno initially presented itself to Lightspeed as a 'super label,'" and then argued about what that document does and does not show. Dkt. 27 at 6. Its publicly filed Motion to Quash likewise describes the nature and timing of "Lightspeed's due diligence and investment analyses." Dkt. 1 at 8. And Lightspeed publicly announced its Suno investment thesis in a May 20, 2024 post on its own website titled "Suno's Hit Factory." Dkt. 19 at 1 n.2.

A party that has itself publicized information cannot then claim that the same information requires secrecy. The First Circuit has explained that an interest in confidentiality "may lose some force in light of [the movant's] prior publication of the information that he now seeks to protect[,]" *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013), and that "prior publicity weighs strongly against sealing," *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 506 n.17 (1st Cir. 1989). Courts in this District have found waiver on comparable facts. *See Roy*, 2023 WL 4186291, at *3-4 (party "waived its claim of confidentiality" by publicly filing the materials; "the cat is out of the bag"). Lightspeed cannot use the Exhibits as a sword in its public reply while insisting that Plaintiffs' references to the same documents remain hidden.

**D. The Strong Public Interest in This Litigation Weighs Against Impoundment**

Good cause is not assessed in a vacuum. Courts "weigh the presumptively paramount right of the public to know against the competing private interests at stake[,]" *Standard Financial*, 830 F.2d at 410, and the public interest in the subject matter is part of that balance, even for discovery

materials, *see Public Citizen*, 858 F.2d at 787 (affirming modification of protective order where "there is a strong public interest in the documents at issue"). Where litigation involves "matters of significant public concern[,]" the "threshold showing required for impoundment . . . is correspondingly elevated." *Standard Financial*, 830 F.2d at 412.

That describes this case. Whether AI companies may copy copyrighted sound recordings wholesale to build products that compete with them is a question of national importance to artists, the music industry, the technology sector, and the public. Suno has publicly staked its defense on fair use, and the fourth fair-use factor turns on the effect of Suno's copying on the market for Plaintiffs' works. Contemporaneous evidence regarding how Suno pitched itself to its lead investor goes to the heart of that question, as well as to willfulness. The public has a legitimate interest in understanding how what Suno told its investors is inconsistent with the positions it has taken elsewhere.

Moreover, unlike a routine discovery squabble between parties, the motion on which the Exhibits were filed is the entire subject of this miscellaneous proceeding: the Court will necessarily rely on the Exhibits in determining whether Lightspeed must comply with the subpoena at all. And the Exhibits are likely to be used again on the merits of the underlying action, where the presumption of access will apply in full. Sealing them now would only defer, not avoid, the public-access question.

### E. Lightspeed's Authorities Do Not Supply Good Cause

Lightspeed relies on *Warren v. Rojas*, 2016 WL 1642584, at *1 (D. Mass. Apr. 25, 2016), where this Court continued the impoundment of discovery-motion materials that had been produced under a joint protective order. But nothing in *Warren* suggests that a protective-order designation automatically supplies good cause regardless of the circumstances, and the

circumstances here are materially different. In *Warren*, there was no indication that the designating party had itself publicized the materials, that the materials principally concerned a different entity that had declined to seek sealing, or that the information was years out of date. Here, all three are true. And here, unlike in *Warren*, the governing Protective Order expressly requires the designating party to justify sealing under Local Rule 7.2, Dkt. 21 at 2—an obligation Lightspeed has not met.

Lightspeed's remaining authorities are inapposite. *W.N. Motors, Inc. v. Nissan N. Am., Inc.*, 2022 WL 1568443, at *2 (D. Mass. May 18, 2022), addressed whether a competitor-party's owners and employees could directly access other dealers' current pricing and sales data in discovery—not whether stale documents could be filed on the public docket. Plaintiffs are record companies, not venture capital firms; they do not compete with Lightspeed for investments. *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995), and *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264 (S.D.N.Y. June 17, 2020), are out-of-circuit decisions that speak to the privacy of "innocent third parties." Lightspeed is no innocent bystander: it led Suno's Series B, invested twice more after this suit was filed, holds a seat on Suno's Board, and shares Suno's counsel. Dkt. 19 at 1, 3–4, 20. And Lightspeed's own case, *Roy*, denied impoundment. 2023 WL 4186291, at *4–5.

### F. At Most, Any Impoundment Should Be Limited to Narrow Redactions

Even where some protection is warranted, the First Circuit directs courts to consider whether redaction, rather than wholesale sealing, will protect legitimate interests while preserving public access. *Kravetz*, 706 F.3d at 62 ("it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document[]") (quotation omitted). Lightspeed has not proposed any redactions; it seeks to seal

two entire exhibits totaling 27 pages, plus every reference to them in Plaintiffs' brief.

Should the Court conclude that any portion of the Exhibits warrants protection, the Court could redact: (1) the specific dollar amounts and negotiated terms of Lightspeed's Series B investment; (2) the names and identifying details of third-party references; and (3) references to other Lightspeed portfolio companies. Everything else, including all passages quoted or described in Plaintiffs' Opposition, should be filed publicly.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Lightspeed's request for impoundment and order that unredacted versions of Plaintiffs' Opposition (Dkt. 19) and Exhibits 3 and 4 to the Rivera Declaration (Dkt. 20) be filed on the public docket within seven days. In the alternative, Plaintiffs request that the Court limit any impoundment to the narrow redactions described in Section F and order that redacted versions of the Exhibits and an unredacted Opposition be filed publicly.

Dated: October 28, 2026

HUESTON HENNIGAN LLP

By: *Alexandra Arnold*

Alexandra Arnold (BBO #706208)
**CLOHERTY & STEINBERG LLP**
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (617) 848-0830
aarnold@clohertysteinberg.com

Moez M. Kaba (to be admitted *pro hac vice*)
Mariah N. Rivera (to be admitted *pro hac vice*)
Alexander R. Perry (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com

Christina V. Rayburn (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
620 Newport Center Dr., Suite 1300
Newport Beach, California 92660
Telephone: (949) 356-6412
Facsimile: (888) 775-0898
crayburn@hueston.com

Rajan S. Trehan (to be admitted *pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rtrehan@hueston.com

*Attorneys for Plaintiffs*
*UMG Recordings, Inc., Capitol Records, LLC, And Sony Music Entertainment*